# IN RE STANDARD UNDERGROUND CABLE COMPANY.

TRADEMARKS; TRADEMARK ACT OF FEBRUARY 20, 1905; DRAWINGS; SPECIMENS.

1. The trademark act of February 20, 1905, does not create trademark rights, but merely provides for their registry, and the courts must

in the end determine the scope of any trademark, registered or unregistered.

2. Under the trademark act of February 20, 1905, requiring an applicant to furnish a drawing of the trademark sought to be registered, and to furnish such a number of specimens of the trademark as actually used as may be called for by the Commissioner of Patents, the latter officer is vested with power merely to determine whether the trademark is subject to appropriation, and has actually been used in interstate or foreign commerce, and he cannot require the applicant to add to his drawing matter appearing on the specimen, but not contained in the drawing.

No. 340.  Patent Appeals.  Submitted March 21, 1906.  Decided April 3, 1906.

HEARING on an appeal from a decision of the Commissioner of Patents refusing to register a trademark.   *Reversed.*

The facts are sufficiently stated in the opinion.

*Messrs. Christy & Christy* for the appellant.

*Mr. John M. Coit* for the Commissioner of Patents.

Mr. Justice DUELL delivered the opinion of the Court:

This is an appeal [by the Standard Underground Cable Company] from the decision of the Commissioner of Patents refusing to register appellant's trademark, which is alleged to consist of the word "eclipse," and which is used in connection with insulated wire.

The ground upon which registration is refused is stated to be that the mark shown and described in the application is not the mark which the appellant has used.

The record discloses that the word "eclipse," as used by appellant, appears upon a label.  It is stated in the application for registration, that "the trademark is usually displayed by attachment to the coils or rolls of wire as prepared for the market of a printed label bearing the said trademark."  The record does not contain a sample of the label, but one is in-

corporated in appellant's brief, and no question is raised that the label is otherwise than as shown. This label has various descriptive words printed upon it, together with the name and address of appellant. The word "eclipse" is printed upon a dark background representing a partial solar eclipse, and underneath this dark background are the words, "Black Core." The drawing furnished as a part of the application shows only the word "eclipse."

The question is whether appellant, by printing the word "eclipse" upon the label, with certain accessories, must disclose in his application these accessories, or any part of them, and, if the latter, which ones.

When an applicant presents his alleged trademark for registry under the act approved February 20, 1905, who is to determine of what the mark consists? If, as in the present case, the mark is impressed upon a label, and, in addition to the matter claimed as the trademark by an applicant, certain accessories are shown, is the power vested in the Commissioner of Patents to say to applicant, You must describe or show your mark not only as consisting of what you say it is, but also you must include such portion of the accessories, of parts of the label, as I think are a material portion of the mark, although you may think otherwise? The power is an autocratic one, and its possession by the Commissioner of Patents cannot be presumed, but must, we think, be set forth in the statute with reasonable clearness. We must bear in mind that the trademark act of 1905 does not create trademark rights. It provides for their registry. The courts in the end are to determine the scope of any trademark, registered or unregistered. If the holding of the Commissioner of Patents as to what is an applicant's real trademark proves to be erroneous, who suffers therefrom? Surely not the Patent Office, or its officials. Rather the registrant, and those holding under him. As the burden is his, why should not the election be his? If he errs he pays the penalty. The general public is no more likely to be injured in the one case than in the other. An examination of so much of the trademark act of 1905 as is pertinent to the question under consideration discloses that the applicant is required to fur-

nish, among other things, a drawing of the trademark. In addition he is obliged, if required by the Commissioner of Patents, to furnish such a number of specimens of the trademark as actually used as may be called for. If none are called for he need furnish none. If none are required his trademark certificate will issue, and the validity of its registry cannot be invalidated for that reason.

The act is silent as to the use to which the specimens are to be put. The drawing is manifestly to be furnished for photolithographic purposes. It may be that the specimens may be required for the purpose of showing that the mark has actually been used, how affixed to the goods, and that the claimed mark actually appears upon the specimens furnished. It does not seem to us that it is to be presumed that the specimens are to be furnished in order that the Commissioner of Patents may pass upon the question as to how much of the matter which appears upon the specimen constitutes the mark. Nowhere in the act do we find any power vested in the Commissioner of Patents to decide for the applicant the scope of his claimed trademark. The Commissioner is vested with power to determine, in the first instance, whether the mark, as described, shown, and claimed, is subject to appropriation by the applicant, and may satisfy himself as to whether the trademark has been actually used in interstate or foreign commerce. When he finds that the mark as claimed has so been used, it is not for him to turn to the specimen, if one be required by him, and, seeing other matter than the mark claimed, shown on the specimen, require applicant to add any such matter. When he does this he goes beyond what, to us, seems to be the intent of the act. Any rule of the Patent Office which would require the drawing filed to be a facsimile of the sample specimen furnished would, in our opinion, be invalid. It is within common knowledge that a trademark is ordinarily used upon a label which contains embellishments, ornamentations, and other matter, which, standing by themselves, may often be proper subject-matter for exclusive appropriation as trademarks, yet such matter is no essential part of the trademark claimed and by which the brand, in connection with which they are used, becomes known. This

is specially so when the trademark is a fancy name or coined word.

We repeat that we do not think that Congress intended to confer upon the Commissioner of Patents authority to say to an applicant how much or how little of the embellishments appearing in connection with what may be called the essential feature of a trademark form an actual part of the trademark. Rather do we think that this right of selection and designation rests with the applicant. No general rule can possibly be applied, and where this is the case it is unwise to attempt to exercise a power not expressly vested in an executive officer.

The proper forum for the decision of such questions is the courts where each case can be passed upon as it arises.

We conclude that the rejection of the appellant's application for registration was not well founded. We therefore reverse the decision of the Commissioner of Patents.

The clerk of the court will certify this opinion and the proceedings of the court in the premises to the Commissioner of Patents, according to law.                                        *Reversed.*