Application of SERVEL Inc.
Patent Appeals No. 5658.

United States Court of Customs and
Patent Appeals.
April 3, 1950.

J. L. Kelly, Washington, D. C. (A. Yates Dowell, Washington, D. C., of counsel), for appellant.

E. L. Reynolds, Washington, D. C. (Walter J. Derenberg, Washington, D. C., of counsel), for Commissioner of Patents.

Before GARRETT, Chief Judge, and JACKSON, O'CONNELL, and JOHNSON, Judges.

O'CONNELL, Judge.

This is an appeal from the decision of the Commissioner of Patents in which the decision of the Examiner of Trade-Marks refusing appellant's application to register the mark "Servel" was affirmed on the ground that the mark sought to be registered in Class 38 is a mutilation of the mark "Servel Inklings" actually used by appellant on a periodical "Published every other Friday by and for the employees of Servel, Inc., Evansville, Ind."

After final rejection of the mark by the examiner, appellant appealed to the Commissioner of Patents who affirmed the decision of the examiner, 75 USPQ 247. From that decision appellant petitioned for reconsideration. The request was granted but, upon such reconsideration, the commissioner adhered to his original decision, 77 USPQ 57.

The drawing filed by appellant as part of the application shows the word "Servel" printed in large black letters. The specimens of the mark actually used and filed by appellant show at the top center of the masthead on the front page a large patriotic insignia, characteristic of the war period in which that particular issue was published, namely, August 11, 1944. On the left of the insignia, the word "Servel" is printed in block letters, and on the right, the word "Inklings" is printed in a large and different kind of type.

"Servel" is a coined and arbitrary term. "Inkling," as indicated by the contents of the involved publication, means an expression of something, as a rumor, report, hint or intimation, concerning the personnel of the Servel organization or the trade.

Appellant subsequently filed specimens of trade-marks issued to appellant for other publications in Class 38 showing use of the word "Servel," such as The Servel Salesman, Servel News, and Servel Refrigograms. The examiner found that the word "Servel" was common to each of those titles and held that while the word was an arbitrary feature of each of the marks, it did not constitute the entire mark.

There has been no disagreement between counsel for appellant and the Solicitor for

the Patent Office that the term "Servel Inklings" would be registrable as a whole, although the word "Inkling" is descriptive and in the public domain. The point in issue is whether "Servel," standing alone, is registrable. Appellant urges that it is, for the reason that no provision of law requires that the descriptive word "Inkling" must be included with the word "Servel" in appellant's application for registration.

Appellant in support of its position relies here, as it did before the tribunals of the Patent Office, on the decision in the case of In re Standard Underground Cable Company, 27 App.D.C. 320. Appellant contends that the rule of law there laid down by the court is the proper rule applicable to the facts of the instant case because the two cases are on all fours for practical purposes, including trade-mark registration.

The appeal in the case just described was taken from the decision of the Commissioner of Patents refusing to register the appellant's trade-mark, alleged to consist of the word "Eclipse" and used in connection with insulated wire, by attachment to coils of wire, of a printed label, described as follows in the court's opinion, 27 App. D.C. at page 322:

" * * * This label has various descriptive words printed upon it, together with the name and address of appellant. The word 'eclipse' is printed upon a dark background representing a partial solar eclipse, and underneath this dark background are the words, 'Black Core.' The drawing furnished as a part of the application shows only the word 'eclipse.'

"The question is whether appellant, by printing the word 'eclipse' upon the label, with certain accessories, must disclose in his application these accessories, or any part of them, and, if the latter, which ones."

The commissioner upon the foregoing facts refused registration of the mark on the ground that the word "Eclipse" was not the mark the appellant had used. The court of appeals concluded that the commissioner's rejection of the application for registration was not well founded, and in reversing that decision stated:

"We repeat that we do not think that Congress intended to confer upon the Commissioner of Patents authority to say to an applicant how much or how little of the embellishments appearing in connection with what may be called the essential feature of a trademark form an actual part of the trademark. Rather do we think that this right of selection and designation rests with the applicant. No general rule can possibly be applied, and where this is the case it is unwise to attempt to exercise a power not expressly vested in an executive officer.

"The proper forum for the decision of such questions is the courts where each case can be passed upon as it arises."

The doctrine of the Standard Underground Cable Company case was subsequently approved and applied in the cases of Graves v. Gunder, [1908] C.D. 201, Tip Top Bottling Co. v. Jones, [1927] C.D. 1, and other cases.

In overruling the contentions of appellant in the case at bar, the examiner summarized his position in the following statement: "It is believed that the complete title of applicant's publication is 'Servel Inklings' and that such is the name by which this particular publication is distinguished from other publications. To permit the registration of the word 'Servel' alone would amount to a mutilation of the mark actually used."

Support for the views which the examiner expressed were found, the examiner said, in the following decisions:

Ex parte Daily Review Corporation, 163 Ms.D. 761; 528 O.G. 1044; 50 U.S.P.Q. 153; wherein it was held that the use of "Nassau Daily Review-Star" did not constitute a trade-mark use of "Review-Star" alone.

Ex parte The Oil City Derrick, 151 Ms.D. 10, 15 T.M.Rep. 428, refusing registration of the mark "Derrick" alone when the complete title was "The Oil City Derrick".

Quaker City Flour Mills Co. v. The Quaker Oats Co., Quaker Mills Co. and American Cereal Co., 214 O.G. 684; 43 App.D.C. 260, holding that use of "Quaker

194

City" did not establish trade-mark use of the word "Quaker" alone.

There is no question of use of appellant's trade-mark by any one other than appellant. There is no suggestion that "Servel," standing alone, is merely a geographical term, descriptive of the goods, or a device contrived to evade the law. However, the situation here presented calls for construction by this court of the provisions of section 5 of the Trade-Mark Act of 1905, 33 Stat. 725, which, so far as pertinent, read:

"That no mark by which the goods of the owner of the mark may be distinguished from other goods of the same class shall be refused registration as a trade-mark on account of the nature of such mark unless such mark—

\* \* \* \* \* \*

"Provided, That no mark which consists merely \* \* \* in words or devices which are descriptive of the goods with which they are used, or of the character or quality of such goods, or merely a geographical name or term, shall be registered under the terms of this Act: \* \* \*."

Appellant contends that the three cases enumerated by the examiner and relied upon by him and the commissioner as controlling are nowise pertinent to the question here in issue for the reason that in each of them the registration of the mark involved was prohibited by the mandate of the statute on grounds other than that of mutilation.

The appellant in the case of the Daily Review Corporation applied for registration of the notation, "Nassau Daily Review-Star," which the appellant had actually used as a trade-mark for a daily newspaper. "Nassau" was a geographical term and "Daily Review" was descriptive of the goods. The examiner required disclaimer of "Nassau Daily Review." The appellant, in lieu of such disclaimer, offered to delete from the drawing the words "Nassau Daily." The examiner ruled that such deletion would result in mutilation of the mark and accordingly refused to register it in the absence of the disclaimer previously required. On appeal, the commissioner

sustained the action of the examiner, having observed that "Daily Review," standing alone, would not be sufficient to function as the appellant's trade-mark.

Appellant in the case at bar correctly points out that each of the three cases upon which the examiner and the commissioner relied are substantially identical. There the refusal to register each of the respective marks was due to the use therein of geographical or descriptive matter, the deletion of which would destroy the identity of the mark. For that reason, the three enumerated cases are not regarded as decisive of the question here in issue.

The record shows that the word "Servel" is appellant's primary and technical trade-mark; that during its history of approximately twenty-five years, the mark has been registered in ten different classes in the Patent Office for use on articles such as household refrigerators of various kinds, refrigeration apparatus, condensing units, air conditioners, paints, enamels, publications, etc.

Appellant asserts in its brief that never before has the word "Servel" been refused registration because of its association in use with other things, and that " \* \* \* Servel in and of itself whenever it is seen in the United States or abroad means only one thing—the commercial signature of Servel, Inc., your appellant. Whether this trade-mark Servel is used alone or with other notations, it is still a technical trade-mark that has been used and is being used, in a trade-mark sense, by appellant. \* \* \*"

The commissioner, when he originally affirmed the action of the examiner, quoted in part from a paragraph in the decision of the Supreme Court in the case of Estate of P. D. Beckwith, Inc. v. Commissioner of Patents, 252 U.S. 538, 40 S.Ct. 414, 64 L.Ed. 705, to the effect that user, under section 2 of the Act, is the foundation of registry. Appellant in its petition for reconsideration contended that the doctrine of the Beckwith case had no relation whatever to the facts in the instant case. In reply to that contention, the commissioner quoted the full paragraph from which he

had previously taken a part, and stated: "In my decision, of which reconsideration is requested, the case of [Estate of P. D.] Beckwith [Inc.] v. Commissioner of Patents, 252 U.S. 538 [40 S.Ct. 414, 64 L.Ed. 705], was cited and the parts quoted therefrom were relied upon to state a principle of trade-mark law as defined by the Supreme Court and that principle is deemed applicable to the instant case. The Supreme Court in that case reversed the decision of the Court of Appeals of the District of Columbia which had affirmed the Commissioner's requirement of erasure and removal of descriptive portion of a trademark as used, and approved the practice of disclaiming such portions * * *."

The Supreme Court in the Beckwith case noted the distinction that under the mandate of the statute, registration was prohibited, not of merely descriptive words, but of a trade-mark which consisted merely of such words and no others. The Supreme Court there acknowledged the value of the practice that a composite trademark which included descriptive words may be registered by making a disclaimer of record of the descriptive words to which the registrant did not have an exclusive right.

The excerpt hereinbefore quoted from the commissioner's decision indicates definitely that he deemed the principle of disclaimer applicable to the facts in the instant case.

Prior to the effective date of the Trade-Mark Act of 1946, 15 U.S.C.A. § 1051 et seq., there was no statutory provision authorizing the disclaimer of unregistrable subject matter, although the practice grew up in the Patent Office of allowing or requiring such matter to be disclaimed. There were, however, harsh results sometimes involved in the use of a disclaimer, for the reason that matter once disclaimed could never be reclaimed by the applicant. Warner-Patterson Co. v. Malcomb, 39 F.2d 274, 17 C.C.P.A., Patents, 984; In re Canada Dry Ginger Ale, Inc., 87 F.2d 736, 24 C.C.P.A., Patents, 872.

The described deficiency in the former practice for disclaiming unregistrable material has been remedied, however, by section 6 of the Trade-Mark Act of 1946, which provides, among other things, that the commissioner shall require unregistrable matter to be disclaimed, but such disclaimer shall not prejudice or affect the applicant's rights then existing or thereafter arising in the disclaimed matter. See The New Trade-Mark Manual by Daphne Robert, 1947, pages 77–81.

■ The courts in a proper case may recognize the right to registration of one part of an owner's mark consisting of two parts. See Saxlehner v. Eisner & Mendelson Co., 179 U.S. 19, 21 S.Ct. 7, 45 L.Ed. 60. The courts have recognized also that the requirement of the statute, that no mark shall be refused registration if the goods of the owner of the mark may be distinguished thereby from goods of the same class, is just as imperative as the prohibitory provisions against registration in those cases enumerated in section 5 of the Act. Estate of P. D. Beckwith, Inc. v. Commissioner of Patents, supra.

The Commissioner of Patents, appellant, and the Solicitor for the Patent Office in support of their respective positions have each cited quite a number of other trademark cases. Each side in turn has properly distinguished the cases cited by the other. Most trade-mark cases may be distinguished from one another without much difficulty because of the usual difference in facts. The citation of a case or an array of cases is therefore of little value, except for whatever may be contained therein with respect to the statement or application of a principle of trade-mark law.

The product here in issue is a periodical which is mailed direct to the homes of all Servel employees. It is their factory newspaper. With respect to the scope of the publication, it is stated in the record that "This publication has been unusually successful in building loyalty among Servel workers and in demonstrating the fact that Servel is a good place to work." The other Servel publications, for which trademarks have been issued to appellant as hereinbefore described, are periodicals directed to specific groups in the organiza-

tion having to do with the development of sales of Servel products or to create a good will therefor. Those publications appear to have no other purpose. Accordingly, the effort by the Patent Office to compare appellant's periodicals with Readers Digest, Saturday Evening Post, and other magazines of national scope seems beside the point.

There can be no doubt that the word "Servel" here involved clearly distinguishes appellant's publication from others of the same class; and that no person will be injured or deceived by its registration, so far as the record discloses. In view of that conclusion, it is deemed unnecessary to discuss the numerous cases which have been cited by counsel for appellant and the Solicitor for the Patent Office. Accordingly, the decision of the Commissioner of Patents, for the reasons stated, is reversed.

Reversed.