**QUAKER STATE OIL REFINING CORPORATION, Appellant,**

v.

**QUAKER OIL CORPORATION, Appellee.**

**Patent Appeal No. 8616.**

United States Court of Customs and Patent Appeals.

Jan. 20, 1972.

Edward G. Fenwick, Jr., Mason, Fenwick & Lawrence, Washington, D. C., attorneys of record, for appellant.

Frank B. Powell, Cohn & Powell, St. Louis, Mo., attorneys of record, for appellee.

Before RICH, ALMOND, BALDWIN, and LANE, Judges, and RAO, Judge, United States Customs Court, sitting by designation.

ALMOND, Judge.

This is an appeal from a decision of the Trademark Trial and Appeal Board, reported in full at 161 USPQ 547 (1969), sustaining a notice of opposition against an application [1] to register the mark "SUPER BLEND" on the Principal Register for motor oil under section 2(f) of the Act of 1946. (15 U.S.C. § 1052(f)). Applicant, Quaker State Oil Refining Corporation, hereinafter appellant, asserted use since September 16, 1954 and ownership of Registration No. 623,712 [2] and Registration No. 664,961.[3] Appellant sought to establish that the designation SUPER BLEND had become distinctive as a result of substantially exclusive and continuous use in interstate commerce for five years next preceding September 9, 1965, the filing date of the application. Appellant presented before the trademark examiner certain evidentiary material to show secondary meaning in SUPER BLEND.

Quaker Oil Corporation, hereinafter appellee, opposed registration, alleging that it is a distributor of packaged motor oils; that continuously long prior to September 9, 1965 it had applied the descriptive words SUPER BLEND to containers for certain of its motor oils; that it has used SUPER BLEND as a descriptive term in its advertising of motor oil; that SUPER BLEND merely describes the character of motor oil and is not indicative of the goods of any single person or entity; that SUPER BLEND has not become distinctive of appellant's motor oil; that the assertion

1. Serial No. 227,518 filed September 9, 1965.

2. Issued March 20, 1956 on Supplemental Register and covering SUPER BLEND for motor oil.

3. Issued July 29, 1958 on the Principal Register and covering a composite mark including SUPER BLEND for motor fuel and gasoline with a disclaimer of exclusive right in SUPER BLEND apart from the composite mark.

of substantially exclusive use for five years next preceding September 9, 1965 by appellant in its application is contrary to fact; that appellee is entitled to continue its use of SUPER BLEND as an indicator of grade and quality; that awarding a registration to appellant of SUPER BLEND for the purpose sought would interfere with appellee's inherent right to use the term descriptively by reason of the presumptions which would emanate therefrom; and that granting the registration sought by appellant would constitute an instrument by which appellant could harass appellee and its customers with accusations of infringement and threats of litigation.

It appears that appellee is engaged in the business of selling motor oils, greases, anti-freezes and other automotive products of similar nature. It buys finished products from oil companies and repackages for resale and, to some extent, blends these oil products. Its market area comprises between 42 to 45 states, its dominant outlet being in the midwestern and eastern areas of the United States. Its purchasing customers consist of dealers, filling stations, wholesale automotive jobbers, garages, wholesale automotive departments and large chain operations.

The record reveals that appellee first used the term SUPER BLEND for motor oil in 1954 or 1955 by rubber stamping the term on the lid of the containers and that such practice continued for six months to a year. Subsequently, the term was lithographed on can lids. Appellee uses the designation SUPER BLEND in conjunction with a multi-viscosity oil.

Appellee's sales during 1966 under SUPER BLEND were between $200,000 and $300,000. Appellee also packs oil under private labels. It packs 10W–30 motor oil for the Ameron Company in cans bearing the mark AMERON and the term SUPER BLEND. It packs the same grade product for Gem Stores and Spartan Stores under the marks GEM and SPARTONE with SUPER BLEND appearing on the can lids. It appears that SUPER BLEND was placed on the cans at the request of the owners of the packages. Packaging for Ameron extends from March 1964 and embraces approximately 50,000 cases of motor oil; Gem Stores use approximately 10,000 cases per year of motor oil in containers with lids bearing the term SUPER BLEND.

Appellant dispenses multi-viscosity motor oil in containers bearing the label "QUAKER STATE SUPER BLEND MOTOR OIL." This term is presented within a representation of the letter "Q." SUPER BLEND was first used in the summer of 1954. During the period 1954–67 it sold 377,342,000 quarts bearing the designation SUPER BLEND in the manner above noted.

Appellant has advertised its product in nationally distributed consumer magazines and trade journals at a cost ranging between two and three million dollars.

The record reveals that appellee's use of SUPER BLEND came to appellant's attention some time prior to October 11, 1961. By letter bearing that date appellant protested such use, asserting that it constituted an infringing and unlawful use. Appellee promptly responded by letter dated October 20, 1961, asserting its position that its use of SUPER BLEND was in a descriptive sense and that no one had any exclusive right in the term as applied to motor oil. Further, appellee asserted that both appellant and the Patent Office recognize that the words SUPER BLEND are purely descriptive and that its use of the term did not constitute an infringement of any rights of appellant. Fully aware of appellee's use of SUPER BLEND in 1962 and thereafter, appellant did not reply to appellee's letter nor did it undertake any legal action against appellee.

The threshold issue here is whether, as appellee contends, the term SUPER BLEND is merely descriptive. (15 U. S.C. § 1052(e) (1). The goods of the parties consist of multi-viscosity oils, and

the record amply supports the conclusion that these oils constitute a blend of oils. When the term SUPER BLEND is, as here, applied to the product, the conclusion is inescapable that the product is an allegedly superior blend of oils. See In re Sun Oil Co., 57 CCPA 1147, 426 F.2d 401 (1970), where this court held that the term CUSTOM–BLENDED had a merely descriptive significance as applied to blended gasoline.

We also agree with the observation of the board that, when appellant sought registration of SUPER BLEND on the Supplemental Register, it admitted that the term was merely descriptive of its goods and that when it disclaimed said term in applications for registrations of compound marks, it again admitted the merely descriptive nature of the mark and acknowledged that it did not have an exclusive right therein at that time.

Citing section 6(b) and section 27 of the Lanham Act, the board took the position that the disclaimer of SUPER BLEND by appellant could not prejudice, or affect, appellant's rights then existing or thereafter arising in said term, or its right of registration on another application if the disclaimed matter "be or shall have become distinctive" of its goods, nor could registration on the Supplemental Register preclude registration on the Principal Register.

The question is therefore posed as to whether SUPER BLEND has become distinctive of appellant's goods. The board considered all the evidence of record in reaching the conclusion that appellant has not established under § 2(f) that SUPER BLEND has become distinctive of its goods. After reviewing this evidence and considering the arguments of counsel, we are not persuaded of reversible error in the board's decision.

■ It should be noted that appellee is not claiming trademark rights in SUPER BLEND. It seeks only freedom to continue using the term in what it considers a descriptive manner. It is well settled that under such a situation the right to registration must be decided on the basis of the factual situation, including opposer's use of the term, as of the time when registration is sought. McCormick & Co., Inc. v. Summers, 53 CCPA 851, 354 F.2d 668 (1966); Roselux Chemical Co., Inc. v. Parsons Ammonia Co., Inc., 49 CCPA 931, 299 F.2d 855 (1962); DeWalt, Inc. v. Magna Power Tool Corp., 48 CCPA 909, 289 F.2d 656 (1961).

■ We think it a fair assessment of the facts of record that appellee's use of SUPER BLEND was virtually the same in duration of time as that of appellant. In addition, appellee's sales were in sufficient volume and magnitude to bring its use of SUPER BLEND to the attention of appellant in the early 1960's. As an example of appellee's substantial use of the descriptive term, we note that as of September 9, 1965 Ameron had purchased for resale from appellee in excess of 50,000 cases of motor oil labeled SUPER BLEND. This evidence of a significant and continuous concurrent use of the term by appellee rebuts appellant's contention that it has exclusively and continuously used the mark with the result that it has become distinctive of its goods. See, e. g., Roselux Chemical Co., Inc. v. Parsons Ammonia Co., Inc., supra.

We agree with the board in its conclusion that:

&ast; &ast; &ast; [O]pposer's use and the Ameron Company's use of "SUPER BLEND" constitutes "strong evidence militating against a finding that the term in question has become distinctive of applicant's goods in commerce.

&ast; &ast; &ast; &ast; &ast; &ast;

We conclude that the evidence is wholly insufficient to establish that "SUPER BLEND" had become distinctive of applicant's goods within the meaning of Section 2(f) as of the time applicant sought registration thereof.

Therefore, we affirm the decision of the board.

Affirmed.