**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| BBK TOBACCO & FOODS LLP, DBA HBI International, an Arizona limited liability partnership, | Nos. 22-16190 22-16281 |
| *Plaintiff-counter-defendant-Appellant / Cross-Appellee*, | D.C. No. 2:19-cv-05216-MTL |
| v. | |
| CENTRAL COAST AGRICULTURE, INC., a Delaware corporation, | OPINION |
| *Defendant-counter-claimant-Appellee / Cross-Appellant*. | |

Appeal from the United States District Court
for the District of Arizona
Michael T. Liburdi, District Judge, Presiding

Argued and Submitted September 15, 2023
Arizona State University

Filed April 1, 2024

Before: Andrew D. Hurwitz, Patrick J. Bumatay, and
Roopali H. Desai, Circuit Judges.

Opinion by Judge Desai;
Dissent by Judge Bumatay

# SUMMARY[*]

## Trademark

The panel affirmed in part and reversed in part the district court's judgment and remanded in a trademark infringement action brought by BBK Tobacco & Foods LLP against Central Coast Agriculture, Inc.

BBK, a distributor and seller of smoking-related products with trademarked "RAW" branding, alleged that CCA infringed its mark by selling cannabis products with the mark "Raw Garden." The district court dismissed BBK's false advertising claim and granted summary judgment in favor of CCA on BBK's trademark claims. The district court granted summary judgment in favor of BBK on its counterclaim to invalidate several of CCA's trademark applications and on CCA's counterclaim to cancel BBK's trademark applications for unlawful use.

The panel affirmed the district court's grant of summary judgment in favor of BBK on its claim to invalidate four of CCA's trademark applications. The panel held that, under 15 U.S.C. § 1119, when an action involves a claim of infringement on a registered trademark, a district court also has jurisdiction to consider challenges to the trademark

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

applications of a party to the action. Agreeing with other circuits and the Trademark Trial and Appeal Board, the panel also held that lack of a bona fide intent to use a mark in commerce is a valid basis to challenge a trademark application.

Dissenting, Judge Bumatay wrote that federal courts lack authority to cancel pending applications for trademark registration before the Patent and Trademark Office has even registered the trademark.

In a separately filed memorandum disposition, the panel reversed the district court's summary judgment on BBK's trademark claims and affirmed the summary judgment on CCA's counterclaim to cancel BBK's trademark for unlawful use.

## COUNSEL

Bennett E. Cooper (argued), Frank G. Long, and J. Alex Grimsley, Dickinson Wright PLLC, Phoenix, Arizona; Charles S. Price, Dickinson Wright/Mariscal Weeks, Phoenix, Arizona; for Plaintiff-counter-defendant-Appellant.

Brett M. Schuman (argued) and Jeremy N. Lateiner, Goodwin Procter LLP, San Francisco, California; Jesse Lempel, Goodwin Procter LLP, Boston, Massachusetts; Andrew Kim, Goodwin Procter LLP, Washington, D.C.; Mitchell L. Turbenson and Brian W. LaCorte, Ballard Spahr LLP, Phoenix, Arizona; for Defendant-counter-claimant-Appellee.

## OPINION

DESAI, Circuit Judge:

BBK Tobacco & Foods LLP ("BBK") distributes and sells smoking-related products with trademarked "RAW" branding. It alleges that Central Coast Agriculture, Inc. ("CCA") infringed its mark by selling cannabis products with the mark "Raw Garden." BBK's operative complaint asserts trademark infringement and seeks to cancel several of CCA's trademark applications for lack of bona fide intent to use the mark in commerce. CCA does not dispute the merits of BBK's claim to invalidate its trademark applications, and instead argues the district court lacks jurisdiction to adjudicate the issue. We hold that, under 15 U.S.C. § 1119, when an action involves a claim of infringement on a registered trademark, a district court also has jurisdiction to consider challenges to the trademark applications of a party to the action. We also hold that lack of bona fide intent to use a mark in commerce is a valid basis to challenge a trademark application.[1]

## BACKGROUND

BBK distributes and sells smoking-related products with trademarked "RAW" branding. Its products include cigarette rolling papers, lighters, tobacco shredders, tobacco grinders, and cigarette or cigar rolling trays. CCA sells "Raw Garden" branded concentrate and pre-rolled cannabis products.

---

[1] In a separately filed memorandum disposition, we reverse the district court's summary judgment on BBK's trademark claims and affirm the summary judgment on CCA's counterclaim to cancel BBK's trademark registrations for unlawful use.

BBK claims CCA infringed its RAW trademarks by producing, using, advertising, distributing, and selling products with the Raw Garden label. BBK's amended complaint alleged seven claims: trademark infringement, false designation of origin, and anti-cybersquatting under the Lanham Act; trademark infringement and unfair competition under Arizona common law; a petition to void several CCA trademark applications due to a lack of bona fide intent to use the relevant trademark in commerce; and false advertising under the Lanham Act. CCA counterclaimed, seeking to cancel several BBK trademark registrations for fraud and unlawful use.

The district court granted a motion to dismiss BBK's false advertising claim. The parties cross-moved for summary judgment on all remaining claims. The district court granted summary judgment in favor of CCA on BBK's trademark claims and in favor of BBK on its counterclaim to invalidate several of CCA's trademark applications. It further granted summary judgment in favor of BBK on CCA's counterclaim to cancel BBK's trademark applications for unlawful use. Both parties appealed.

## STANDARD OF REVIEW

We review a grant of summary judgment de novo. *Jada Toys, Inc. v. Mattel, Inc.*, 518 F.3d 628, 632 (9th Cir. 2008). Summary judgment is appropriate only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

## ANALYSIS

BBK seeks to void four of CCA's intent-to-use trademark applications, alleging CCA lacked bona fide

intent to use the marks in commerce. CCA does not challenge the district court's finding that it lacked bona fide intent, and instead argues that the district court lacked jurisdiction to void trademark applications that had not yet matured into registrations. We have not addressed whether district courts have jurisdiction to alter or cancel trademark applications, and if so, whether lack of bona fide intent is a proper basis on which a party can challenge a trademark application. We hold that: (1) district courts have jurisdiction to alter or cancel trademark applications in an action properly brought under 15 U.S.C. § 1119; and (2) lack of bona fide intent is a proper basis on which a party in such an action can challenge a trademark application.

## I. In an action involving a registered mark, district courts have jurisdiction over the trademark applications of parties to the action.

We hold that when an action involves a registered trademark, a district court has jurisdiction to consider challenges to the trademark applications of parties to the action. Section 1119 provides:

> In any action involving a registered mark the court may determine the right to registration, order the cancelation of registrations, in whole or in part, restore canceled registrations, and otherwise rectify the register with respect to the registrations of any party to the action.

15 U.S.C. § 1119. "This language specifies that cancellation may only be sought if there is already an ongoing action that involves a registered mark; it does not indicate that a cancellation claim is available as an independent cause of

action." *Airs Aromatics, LLC v. Victoria's Secret Stores Brand Mgmt., Inc.*, 744 F.3d 595, 599 (9th Cir. 2014). But if there is an underlying registration, Section 1119 permits the district court to "determine the right to registration" and "rectify the register with respect to the registrations of any party to the action." 15 U.S.C. § 1119.

The district court's authority to "determine the right to registration" and "rectify the register" includes the power to decide disputes over trademark applications. The Lanham Act refers to an "[a]pplication for use of trademark" as a "request [for] registration of [a] trademark on the principal register." 15 U.S.C. § 1051(a)(1), (b)(1). A challenge to an application thus necessarily affects the applicant's right to a registration. *See* 15 U.S.C. §§ 1119, 1051(b)(1); *see Romag Fasteners, Inc v. Fossil, Inc.*, 140 S. Ct. 1492, 1494–95 (2020) (calling for interpretation of the Lanham Act starting with the plain language of the provision). The plain language of § 1119 thus grants a district court jurisdiction to consider challenges to the trademark applications of a party to the action if the action involves a registered trademark.

The dissent's examples of a "right to registration" also referring to the registration itself does not change this analysis. We agree that the validity of an existing registration is also covered by § 1119. But the attempt to separate the validity of an application from the validity of a registration ignores the definition of an application. Indeed, some of the dissent's own examples use the term "right to registration" when adjudicating an opposition to an *application*. *See Quaker State Oil Refin. Corp. v. Quaker Oil Corp.*, 453 F.2d 1296, 1299 (C.C.P.A. 1972); *Hollowform, Inc. v. AEH*, 515 F.2d 1174, 1176 (C.C.P.A. 1975).

Permitting a district court to adjudicate trademark applications when an action already involves a registered mark advances the interest of resolving all registration disputes in a single action. "[W]here, as here, there is a potential infringement lawsuit, federal courts are particularly well-suited to handle the claims so that parties may quickly obtain a determination of their rights without accruing potential damages." *Rhoades v. Avon Prods., Inc.*, 504 F.3d 1151, 1165 (9th Cir. 2007) (finding a district court abused its discretion by declining to hear a related registration action in part because "it would waste everyone's time" not to settle a related registration issue in district court). Critically, by specifying that a court "*may* determine the right to registration," § 1119 grants courts discretion to address the trademark applications and registrations of a party to a suit already involving a registration. It does not require district courts to address claims where these interests in efficiency or other considerations counsel against adjudicating a right to registration.

We thus hold that, in an action involving a registered trademark, district courts have jurisdiction to consider challenges to a party's trademark applications.

## II. Lack of bona fide intent is a valid basis to seek cancellation of a trademark application.

An applicant can seek to register a mark under two alternative bases: (1) if a mark is already being "used in commerce;" and (2) if the applicant has "a bona fide intention, under circumstances showing the good faith of such person, to use a trademark in commerce." 15 U.S.C. § 1051(a)(1), (b)(1). While intent-to-use applicants "can begin the registration process having only a sincere intent" to later use the mark in commerce, "the [Lanham Act] also

requires that applicants filing such intent-to-use applications must in due course either (i) file a verified statement of actual use of the mark, or (ii) convert the application into a use application." *M.Z. Berger & Co. v. Swatch AG*, 787 F.3d 1368, 1375 (Fed. Cir. 2015) (citing 15 U.S.C. § 1051(b)(3), (c), (d)).

Three of our sister circuits and the Trademark Trial and Appeal Board have held that "lack of a bona fide intent is proper statutory grounds on which to challenge a trademark application." *Id.*; *see Kelly Servs., Inc. v. Creative Harbor, LLC*, 846 F.3d 857, 863–64 (6th Cir. 2017); *Aktieselskabet AF 21. Nov. 2001 v. Fame Jeans Inc.*, 525 F.3d 8, 21 (D.C. Cir. 2008); *L'Oreal S.A. v. Marcon*, 102 U.S.P.Q.2d 1434, 2012 WL 1267956, at *11 (T.T.A.B. 2012).[2] We agree. As the Federal Circuit explained, because "[a]n opposer is 'entitled to rely on any statutory ground which negates [an applicant]'s right to the subject registration,'" *M.Z. Berger*, 787 F.3d at 1375 (quoting *Lipton Indus., Inc. v. Ralston Purina Co.*, 670 F.2d 1024, 1031 (C.C.P.A. 1982)), lack of bona fide intent "is a proper basis on which an opposer can challenge an applicant's registration," *id.* We thus make explicit what is already clear from the statutory text and hold that lack of bona fide intent to use a mark in commerce is a ground on which a party may oppose a trademark application.

---

[2] Although not binding, we often refer to the expertise of the Board as persuasive authority. *Grupo Gigante SA De CV v. Dallo & Co.*, 391 F.3d 1088, 1095 (9th Cir. 2004).

**CONCLUSION**

We affirm the district court's grant of summary judgment in favor of BBK on its claim to invalidate four of CCA's trademark applications.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

---

BUMATAY, Circuit Judge, dissenting:

Through the Lanham Act, Congress prescribed the process for applicants to attempt to register trademarks on the trademark registry. *See* 15 U.S.C. §§ 1051, 1062. Congress expressly tasked the U.S. Patent and Trademark Office ("PTO") with adjudicating those trademark applications. *Id.* § 1062. Applying for a trademark registration involves an iterative process within the PTO, sometimes requiring back-and-forth discussions and multiple internal appeals. *See id.* §§ 1051, 1062, 1067, 1070.

Unless Congress says so, federal courts generally have no authority to interfere with these procedures. And while the Lanham Act permits courts to cancel trademark *registrations* once the PTO makes a decision, it does not permit federal courts to interfere with the PTO's approval process and to prematurely cancel pending trademark registration *applications*. The Act's text, structure, and context confirm this reading.

Because federal courts lack authority to cancel pending applications for trademark registration, I respectfully dissent from the majority's approval of such authority.

# I.

This dispute started over the use of "raw" as a trademark. BBK Tobacco & Foods, LLP ("BBK") has registered trademarks in "RAW" for distributing and selling cigarette rolling papers and smoking accessories. In total, BBK has 19 separate trademark registrations. Central Coast Agriculture, Inc. ("CCA") sells cannabis-related products but uses as a mark "RAW GARDEN." CCA filed four trademark applications with the PTO based on its intent to use the "RAW GARDEN" mark on certain products in commerce. Those four applications remain pending at the PTO.

BBK sued CCA in federal district court for trademark infringement and other claims based on its use of the "RAW GARDEN" mark. BBK also asked the district court to cancel CCA's four pending PTO applications for lack of a bona fide intent to use those trademarks in commerce. BBK alleged that CCA has no concrete plans to bring the products to market years after the application. In response, CCA counterclaimed, seeking to cancel BBK's trademark registrations based on fraud and unlawful use.

The district court granted summary judgment against BBK's trademark claims and against CCA's counterclaims. "Given the obvious and significant differences between the parties' marks, the absence of actual confusion, and the low net confusion rates generated by the parties' surveys," the district court concluded that no reasonable juror could find for BBK on the likelihood of confusion issue. In a concurrently filed memorandum disposition, the majority and I disagreed on whether the district court's ruling should be affirmed. I conclude it should be. The majority and I

agree that the grant of summary judgment against CCA's counterclaims should be affirmed.

But the district court also granted summary judgment for BBK on its claim to invalidate the four pending CCA trademark applications. The district court agreed with BBK that no evidence supported that CCA would use the challenged marks on the identified goods. The district court ordered CCA's four trademark applications to be "invalid and void for a lack of bona fide intent to use the mark in commerce." In this opinion, the majority and I disagree on whether the district court had the authority to order the four trademark applications to be cancelled. I conclude it does not.

## II.

Section 1119 establishes that "[i]n any action involving a registered mark the court may determine the right to registration, order the cancelation of registrations, in whole or in part, restore canceled registrations, and otherwise rectify the register with respect to the registrations of any party to the action." *Id.* § 1119. The parties do not contest that BBK's claim for cancellation of CCA's four trademark applications is "in an[] action involving a registered mark" and, thus, I assume § 1119 applies.

At issue then is whether § 1119 of the Lanham Act gives federal courts the authority to cancel a pending application for a trademark registration before the PTO has even registered the trademark. Or does the Act require a trademark application to mature to an actual registration before we may step in? Based on the text of the Lanham Act and the nature of trademark application adjudications, I would hold that federal courts have no authority to interfere

with the application for trademark by ordering its cancellation.

## A.

Before examining the text of § 1119, some context is in order.  We must first understand the longstanding relationship between trademark tribunals and federal courts and the procedures established by Congress for trademark application adjudications.

As a historical matter, courts have seemingly always deferred to patent and trademark tribunals to review trademark applications in the first instance. *See Bos. Rubber Shoe Co. v. Abramowitz*, 47 App. D.C. 199, 201 (D.C. Cir. 1917) (The applicant "is not entitled to have his mark registered.  The question of the right of the [prior registration and use of the Boston company's mark to extend to its use of other kinds of goods and] to have its mark registered is left open for the further consideration of the Commissioner of Patents in light of this opinion."); *Van Camp Sea Food Co. v. Alexander B. Stewart Orgs.*, 50 F.2d 976, 978 (C.C.P.A. 1931) (explaining that the district court and circuit court decisions on the descriptive quality of the term "Chicken of the Sea" or similarity between "Chicken of the Sea" and "Breast o'Chicken" in an infringement action, though entitled to deference, are not controlling for the registrability of the term "White Chicken").

And today, through the Lanham Act, Congress gave the PTO the exclusive power to adjudicate trademark applications.  *See* 15 U.S.C. §§ 1051, 1062.  Under the Act, an applicant must first submit to the PTO an application to have a trademark registered in the principal registry either by establishing "first use" of the mark or by asserting a "bona fide intention" to use the mark. *Id*. § 1051(a)–(b).  Congress

then directs the PTO to promulgate rules prescribing the requirements for applications and orders applicants to "comply" with these rules. *Id*. § 1051(a)(4), (b)(4).

On receiving the application, Congress directs the PTO to adjudicate it. The PTO must first refer the application to an examiner to evaluate the application. *See id*. § 1062(a). At this point, if it appears that "the applicant is entitled to registration," the PTO is generally directed to publish the registration. *Id*. And if an application is "not entitled to registration," the applicant is invited to correct any deficiencies. The applicant can reply or amend the application, which the PTO must reexamine. *Id.* § 1062(b)(2). This process may reoccur "repeated[ly]"— until the PTO "finally refuses registration of the mark or the application is abandoned." *Id.* § 1062(b)(1).

Once a PTO examiner makes a final decision, an applicant can generally appeal the decision to the Trademark Trial and Appeal Board and to the Director of the PTO. *See id*. § 1070. Only then can parties go to federal courts. *See id*. § 1071.

Thus, Congress created these specific procedures and protections within the PTO to adjudicate an applicant's trademark registration application. The existence of a comprehensive and iterative process for reviewing trademark applications suggests that federal courts should not interfere lightly by claiming a power to cancel pending trademark applications. Premature interference would effectively take power away from the PTO to work with an applicant to modify, amend, or revise an application. Without express statutory authority, we should refrain from this.

And as shown below, Congress has not granted us this authority.

**B.**

By its text, § 1119 grants federal courts four specific authorities over trademark registrations: (1) to "determine the right to registration"; (2) to "order the cancelation of registrations"; (3) to "restore canceled registrations"; and (4) to "otherwise rectify the register with respect to the registrations of any party." *Id.* § 1119. Unless a court's action falls within one of these four § 1119 authorities, federal courts lack the jurisdiction to order a trademark remedy under the Lanham Act. None of these authorities authorize federal courts to cancel trademark *applications*.

To begin, we can knock out three of these authorities as empowering the cancellation of trademark applications. We know that cancellation of an application doesn't fit within cancelling or restoring "registrations" because *applications* are not yet "registrations"—so there's nothing to cancel or restore. The same goes with the last authority—the ability to "rectify" the register with respect to a party's "registrations." Once again, none of CCA's applications have been entered into the registry—so there are no "registrations" to fix. *See* The Winston Dictionary, 810 (1942) (defining "rectify" as "to correct the faults in; remove mistakes from; set right"); 2 Practical Standard Dictionary, 952 (1945) (defining "rectify" as "[t]o make right; correct; [or] amend"); Webster's Collegiate Dictionary, 832 (5th ed. 1945) (defining "rectify" as "[t]o make or set right; amend").

So that leaves the authority to "determine the right to registration." But again, this doesn't authorize cancelling pending trademark registration applications. Indeed, determining the right to registration doesn't equate to

cancelling or modifying trademark applications.  Instead, the right to registration refers to the court's authority to adjudicate the ownership, scope, priority, and use of trademarks, which may entitle a party to registration of the mark.  *See Lodestar Anstalt v. Bacardi & Co. Ltd.*, 31 F.4th 1228, 1236 (9th Cir. 2022).

So what does determining the "right to registration" look like?  Courts have determined who has the "right to registration" for nearly a century.  *See, e.g.*, *Trustees for Arch Preserver Shoe Pats. v. James McCreery & Co.*, 49 F.2d 1068, 1071 (C.C.P.A. 1931) ("In an opposition proceeding, where the goods of the parties possess the same descriptive properties, applicant's right to registration depends upon whether his mark will conflict with one previously adopted and used by opposer, and in the determination of this question prior registrations by others are not to be considered." (simplified)); *Kraft-Phenix Cheese Co. v. Consol. Beverages*, 107 F.2d 1004, 1006 (C.C.P.A. 1939) (explaining that a trademark case involving the "right to registration" must rest on its own facts and precedents are of little value when analyzing whether a mark application for "O'Kee-Dokee" on soft drinks interferes with the registered mark "O-Ke-Doke" on cheese-coated popcorn); *Application of Servel Inc.*, 181 F.2d 192, 195 (C.C.P.A. 1950) ("The courts in a proper case may recognize the right to registration of one part of an owner's mark consisting of two parts."); *Quaker State Oil Refin. Corp. v. Quaker Oil Corp.*, 453 F.2d 1296, 1299 (C.C.P.A. 1972) (deciding the "right to registration" of the trademark "SUPER BLEND" based on the "factual situation" of concurrent use "as of the time when registration is sought"); *Application of Marriott Corp.*, 517 F.2d 1364, 1368–69 (C.C.P.A. 1975) (holding that "[t]he first user of a trademark in interstate commerce is entitled to

federal registration of that mark," and so to determine "the right to registration . . ., the threshold consideration is that of first use in interstate commerce"); *Hollowform, Inc. v. AEH*, 515 F.2d 1174, 1176 (C.C.P.A. 1975) ("Since [opposer's] rights in the mark are not superior to [applicant's] right to registration, [opposer] cannot be legally 'damaged,' as that term has been construed, by the issuance of a registration to [applicant]."); *Minn. Min. & Mfg. Co. v. Minn. Linseed Oil Paint Co.*, 229 F.2d 448, 454 (C.C.P.A. 1956) (affirming the PTO finding that "[opposer] was without right to challenge applicant's right to registration, since it [does not] appear . . . [to] deal[] in the particular goods (linseed oil and paint derived therefrom) of which it asserts the notation 'Minnesota' is generically descriptive"). All these cases show that courts weigh in on the "right to registration" independent of the trademark tribunal's adjudication of the application. Thus, § 1119 empowers federal courts to determine who has rights to a mark.

While courts have the authority to determine respective rights to registration, it takes quite a leap to also say that courts may then cancel pending trademark applications. Though related concepts, figuring out who has a "right to registration" is a different thing from cancelling applications for trademark registration. Of course, the right to registration may affect the applications' adjudication. But that doesn't alter Congress's choice to leave decisions over trademark applications to the PTO. *See* 15 U.S.C. § 1062.

Take this case. If a registrant, like BBK, believes another party's application, like CCA's, interferes with its use of its registered mark, the district court may determine the parties' respective "right to registration." But it is an entirely different matter to then extrapolate a free-standing power to cancel a party's application. Rather, the Lanham

Act contemplates that BBK may oppose the applications before the PTO. *See id.* § 1063. So nothing prevented BBK from bringing its lack-of-bona-fide-intent challenges there. The Lanham Act then provides that parties engage in a back-and-forth with the PTO. *See id.* § 1062. And if the applications are granted or denied in error, the parties may seek appeals within the PTO. *See id.* § 1070. At that point, federal courts may step in and resolve the dispute. *See id.* § 1071. The Lanham Act thus gives the PTO, not courts, exclusive authority over applications, including their cancellation. *See id*. § 1062. We short-circuit Congress's will by interfering prematurely.

Other textual clues from § 1119 confirm this view. Notice, for example, that § 1119's last authority states that federal courts may "*otherwise* rectify the register with respect to the registrations." *Id.* § 1119 (emphasis added). The term "otherwise" is a big deal. It is a signal from Congress that all preceding authorities must be read similarly to "rectify[ing] the register." 5 Webster's Collegiate Dictionary, 702 (1942) (defining "otherwise" as "[i]n a different manner; in other ways; contrarily"; "[i]n different circumstances"; "[i]n other respects"); *See* 3 Oxford Universal Dictionary, 1392 (1944) (defining "otherwise" as "[i]n another way, or in other ways: differently"); Practical Standard Dictionary, 803 (Vol. 2 1945) (defining "otherwise" as "[i]n a different manner or by other means " and "[i]n other circumstances or conditions: other respects"); The Winston Dictionary, 688 (1945) (defining "otherwise" as "in a different way; differently; as he could not do otherwise"). So "otherwise" signifies some relationship between "rectify[ing] the register" and the preceding authorities, including "determin[ing] the right to registration." *See* 15 U.S.C.

§ 1119.  In other words, the "otherwise" language means that the authority to "determine the right to registration" should be read as another way of "rectify[ing] the register"—which requires a completed registration.  It doesn't broadly grant powers outside of policing the register, like prejudging the validity of pending trademark applications.

The associated-words canon of *noscitur a sociis* also supports excluding the authority to cancel trademark applications from § 1119.  Under that canon, "a word is known by the company it keeps" and so courts must "avoid ascribing to one word a meaning so broad that it is inconsistent with its accompanying words, thus giving unintended breadth to the Acts of Congress." *Yates v. United States*, 574 U.S. 528, 543 (2015) (plurality opinion) (simplified).  Thus, this canon instructs that all the terms in § 1119 be read similarly.  And each of the other powers described in § 1119 refer to control over completed registrations—not unresolved applications.  Given the neighboring terms, we should likewise read "right to registration" as only a power over completed registrations.

Similarly, though a minor point, § 1119's title—"Power of court over registration"—suggests federal courts lack jurisdiction to cancel pending trademark applications.  Though a statutory title may never "limit the plain meaning of the text," a title may sometimes be a helpful interpretative tool. *Cal. Rest. Assoc. v. City of Berkeley*, 89 F.4th 1094, 1105 (9th Cir. 2024) (simplified).  And here, § 1119's title supports limiting federal courts' authority to only a "power over registration," meaning authority over completed registrations themselves—not over applications awaiting decision.

Thus, the text of § 1119 doesn't grant federal courts the authority to cancel pending trademark applications.

For what it's worth, the PTO agrees with this assessment of the statute. "All of the actions [§ 1119] authorizes the []PTO to take, upon court order in a case involving a federal registration, concern registrations." *Piano Wellness, LLC v. Charlotte K. Williams*, 126 U.S.P.Q.2d 1739, 2018 WL 2455403, at *2 (T.T.A.B. 2018). And the PTO believes a court may order the *parties* to effectuate a transfer of the application using "its plenary power," but "is without authority to direct the []PTO to grant or deny the pending applications." *Id.* (simplified).

Indeed, our court has never claimed the ability to direct how trademark applications are adjudicated. Instead, we said only that § 1119 "gives district courts the power to order the cancellation of a trademark registration 'in any action involving a registered mark.'" *Airs Aromatics, LLC v. Victoria's Secret Stores Brand Mgmt., Inc.*, 744 F.3d 595, 598 (9th Cir. 2014) (quoting 15 U.S.C. § 1119). "Th[e statutory] language specifies that cancellation [of a registration] may only be sought if there is already an ongoing action that involves a registered mark; it does not indicate that a cancellation claim is available as an independent cause of action." *Id.* at 599. This limited authority should not be expanded into a freewheeling power to strike applications as we please.

We should have stuck to our previous understanding and limited our authority to cleaning up the trademark registry—we simply have no jurisdiction to adjudicate pending trademark applications.

**III**.

Because BBK's claims only ask for the cancellation of applications which we have no authority to provide under the Lanham Act, I would not reach any other issues here. I respectfully dissent.